IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-56

 No. 326PA19

 Filed 11 June 2021

 CHERYL LLOYD HUMPHREY LAND INVESTMENT COMPANY, LLC

 v.
 RESCO PRODUCTS, INC., and PIEDMONT MINERALS COMPANY, INC.

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

 of the Court of Appeals, 266 N.C. App. 255, 831 S.E.2d 395 (2019), reversing an order

 granting defendants’ motion to dismiss entered on 1 October 2018 by Judge Michael

 J. O’Foghludha in Superior Court, Orange County. Heard in the Supreme Court on

 12 January 2021.

 Manning Fulton & Skinner, P.A., by J. Whitfield Gibson and Charles L. Steel,
 IV, for plaintiff.

 Weaver, Bennett & Bland, P.A., by Abbey M. Krysak, and McGuireWoods, LLP,
 by Bradley R. Kutrow, for defendants.

 Joshua H. Stein, Attorney General, by Nicholas S. Brod, Assistant Solicitor
 General, Ryan Y. Park, Solicitor General, and K. D. Sturgis, Special Deputy
 Attorney General, amicus curiae.

 NEWBY, Chief Justice.

¶1 Expressing one’s views to government officials is foundational to our political

 system. This fundamental right to petition the government is protected by both the

 United States and North Carolina Constitutions. Lawsuits that seek to impose
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 liability based on petitioning activity inevitably chill the exercise of this fundamental

 right. Here defendants exercised their constitutional right to petition the government

 when speaking at the public zoning hearings, a political process. We hold that the

 First Amendment of the United States Constitution and Article I, Section 12 of the

 North Carolina Constitution explicitly protect petitioning activity, including

 defendants’ speech in this case. Therefore, we reverse the decision of the Court of

 Appeals.

¶2 Because this case involves a motion to dismiss, we take the following

 allegations as true from plaintiff’s complaint. In the summer of 2013, Cheryl Lloyd

 Humphrey Land Investment Company, LLC (plaintiff), began negotiations with a

 third party, Braddock Park Homes, Inc. (Braddock Park), to sell approximately 45

 acres of land located in Hillsborough. Braddock Park planned to develop the land into

 a 118-unit subdivision of townhomes. A five-and-a-half acre portion of the property,

 referred to as Enoe Mountain Village (EMV Property), is located adjacent to the

 open-quarry mine that Resco Products, Inc. and Piedmont Minerals Company, Inc.

 (together, defendants) jointly own.

¶3 The property could not be developed as planned unless the Town of

 Hillsborough (Town) annexed the land and rezoned1 it as “Multi-Family Special Use.”

 1 We refer to the annexation and rezoning of plaintiff’s land collectively as “rezoning.”

 Further, we refer to the body deciding whether to rezone plaintiff’s land and before which
 defendants made their contested statements as the “Town.”
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 In the fall of 2013, the Town began a series of hearings to allow the public to express

 their views about the rezoning petition. Defendants’ representatives attended the

 public hearings and opposed the rezoning of the EMV Property. Defendants’

 representatives told the Town that (1) they operate an active mine adjacent to the

 EMV Property; (2) they regularly engage in explosive blasting at the mine; and (3)

 they conduct the explosive blasting operations roughly 300 feet from the EMV

 Property. Defendants’ representatives “maliciously, intentionally and without

 justification misrepresented” that future residents living on the EMV Property could

 be endangered by fly rock, excessive air blasts, and excessive ground vibrations from

 the blasting operations. When questioned, defendants admitted that they had not

 reported any violations of ground vibration or air blast limits or the occurrence of fly

 rock beyond the mine’s permitted areas since the date of their last mining permit.

 Further, defendants conceded they could conduct their operations without

 endangering the future improvements to or residents of the EMV Property. They

 admitted that doing so would require additional safety precautions, increasing their

 costs. Despite the opposition expressed by defendants’ representatives, the Town

 rezoned all of the land as residential and issued the necessary permit in early

 February of 2014.

¶4 Thereafter, plaintiff and Braddock Park entered into a Purchase and Sale

 Agreement, whereby Braddock Park would purchase the entire 45-acre parcel.
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 However, in the agreement, Braddock Park reserved the right to exclude the EMV

 Property from the purchase. Later Braddock Park exercised this contractual right to

 exclude the EMV Property from the purchase, citing the dangers that defendants’

 representatives reported to the Town—i.e., fly rock and damage to the foundations of

 homes.

¶5 Plaintiff thereafter filed its complaint alleging that “[b]y virtue of their

 intentional and malicious misrepresentations made to the Town of Hillsborough, the

 Defendants tortiously interfered with the Plaintiff’s prospective economic advantage

 by inducing Braddock Park Homes, Inc., not to perform [the purchase of the EMV

 Property].” Defendants moved to dismiss the complaint under Rule 12(b)(6) of the

 North Carolina Rules of Civil Procedure, arguing they were immune from liability

 because their statements to the Town were constitutionally protected petitioning

 activity. The trial court granted defendants’ motion to dismiss. Plaintiff appealed.

¶6 The Court of Appeals reversed, reasoning that this case involves the

 applicability of the Noerr-Pennington doctrine under the United States Constitution,

 which provides immunity from antitrust liability based on petitioning activity. Cheryl

 Lloyd Humphrey Land Inv. Co., LLC v. Resco Prods., Inc., 266 N.C. App. 255, 258–59,

 831 S.E.2d 395, 398 (2019). Given the apparent limitations of Noerr-Pennington, the

 Court of Appeals reasoned that defendants’ conduct—speaking in opposition to the

 rezoning of plaintiff’s land—would fall outside of the doctrine’s protections. Id. at 263,
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 831 S.E.2d at 401. The Court of Appeals then determined that defendants may have

 overstated the dangerousness of their blasting activity, despite the classification of

 blasting as ultrahazardous under North Carolina law. Id. at 265, 831 S.E.2d at

 402–03. Further, the Court of Appeals concluded that the statements inducing

 Braddock Park to exercise their contractual right to exclude the EMV Property were

 sufficient to show interference in a business relationship. Id. at 268–69, 831 S.E.2d

 at 403–05. Thus, the Court of Appeals determined that plaintiff’s complaint

 adequately alleged tortious interference with prospective economic advantage to

 survive dismissal under Rule 12(b)(6). Id. at 270, 831 S.E.2d at 405.

¶7 Defendants sought review, which this Court allowed, to determine whether

 defendants must defend a lawsuit premised on statements made while speaking at

 the public rezoning hearings. The right to petition the government, protected by both

 the First Amendment to the United States Constitution and Article I, Section 12 of

 the North Carolina Constitution, prevents a person from being subjected to a lawsuit

 based on that person’s petitioning activity. Here plaintiff’s suit is based on

 defendants’ presentation at the rezoning hearings, which is protected petitioning

 activity. We hold that defendants’ petitioning is protected by the First Amendment

 and Article I, Section 12.

¶8 This Court reviews a trial court’s order on a motion to dismiss de novo, Bridges

 v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013), and considers “whether the
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 allegations of the complaint, if treated as true, are sufficient to state a claim upon

 which relief can be granted under some legal theory,” Coley v. State, 360 N.C. 493,

 494–95, 631 S.E.2d 121, 123 (2006) (quoting Thompson v. Waters, 351 N.C. 462, 463,

 526 S.E.2d 650, 650 (2000)).

 Dismissal under Rule 12(b)(6) is proper when one of the
 following three conditions is satisfied: (1) the complaint on
 its face reveals that no law supports the plaintiff’s claim;
 (2) the complaint on its face reveals the absence of facts
 sufficient to make a good claim; or (3) the complaint
 discloses some fact that necessarily defeats the plaintiff’s
 claim.

 Wood v. Guilford Cty., 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citing Oates v.

 JAG, Inc., 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

¶9 The First Amendment provides that “Congress shall make no law . . . abridging

 the freedom of speech, or of the press; or the right of the people peaceably to assemble,

 and to petition the Government for a redress of grievances.” U.S. Const. amend. I

 (emphasis added). “The right of petitioning is an ancient right. It is the cornerstone

 of the Anglo-American constitutional system.” Norman B. Smith, “Shall Make No

 Law Abridging . . .”: An Analysis of the Neglected, but Nearly Absolute, Right of

 Petition, 54 U. Cin. L. Rev. 1153, 1153 (1986). The Magna Carta of 1215, “the

 fundamental source of Anglo-American liberties,” states that if the king’s officials

 were “ ‘at fault toward anyone,’ ” then the barons could “ ‘lay[ ] the transgression

 before [the king], [and] petition to have the transgression redressed without delay.’ ”
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 Id. at 1155 (emphasis omitted) (quoting William S. McKechnie, Magna Carta, A

 Commentary on the Great Charter of King John 467 (2d ed. 1914)).

 In 1689, the [English] Bill of Rights exacted of William and
 Mary stated: “[I]t is the Right of the Subjects to petition the
 King.” This idea reappeared in the Colonies when the
 Stamp Act Congress of 1765 included a right to petition the
 King and Parliament in its Declaration of Rights and
 Grievances. And the Declarations of Rights enacted by
 many state conventions contained a right to petition for
 redress of grievances.

 McDonald v. Smith, 472 U.S. 479, 482–83, 105 S. Ct. 2787, 2790 (1985) (second

 alteration in original) (citations omitted).

¶ 10 The United States Supreme Court has often addressed the right to petition as

 a defense to antitrust liability. See E. R.R. Presidents Conf. v. Noerr Motor Freight,

 Inc., 365 U.S. 127, 138, 81 S. Ct. 523, 529–30 (1961) (holding the right to petition

 precluded antitrust liability under the Sherman Act); see also United Mine Workers

 of Am. v. Pennington, 381 U.S. 657, 671, 85 S. Ct. 1585, 1594 (1965) (reiterating the

 holding of Noerr). Although the holdings from Noerr and its progeny—the

 Noerr-Pennington doctrine—originated in the antitrust context, the First

 Amendment principles upon which the doctrine rests are foundational to our political

 system. Therefore, the protections afforded by the right to petition, recognized in the

 First Amendment, are not limited to antitrust matters. See Prof’l. Real Estate Inv’rs.,

 Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 59, 113 S. Ct. 1920, 1927 (1993)

 (acknowledging the right to petition functions in “other contexts,” not solely “as an
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 antitrust doctrine”); see also McDonald, 472 U.S. at 485, 105 S. Ct. at 2791 (holding

 that the right to petition, while not absolute, provides the same protection in

 defamation actions as the freedoms of speech, press, and assembly).

¶ 11 Rather, the right to petition protects efforts to influence the actions of

 government officials, whether in the legislative, executive, or judicial branch. See

 Congressional Research Service, S. Doc. 99-16, The Constitution of The United States

 of America: Analysis and Interpretation, 1141–45 (Johnny H. Killian & Leland E.

 Beck eds., 1982). Protected petitioning activity includes lobbying local officials

 regarding a zoning ordinance. See City of Columbia v. Omni Outdoor Advert., Inc.,

 499 U.S. 365, 382, 111 S. Ct. 1344, 1355 (1991) (holding that the right to petition

 precluded liability for lobbying in favor of a local zoning ordinance). The right to

 petition protects petitioning activity “regardless of intent or purpose” because

 whether “a private party’s political motives are selfish is irrelevant[.]” Id. at 380, 111

 S. Ct. at 1354 (citing Pennington, 381 U.S. at 670, 85 S. Ct. at 1593). In a political

 process meant to address public concerns, a commitment to “free and open debate”

 means other parties are free to counter selfish or misleading speech with speech of

 their own. Connick v. Meyers, 461 U.S. 138, 145, 103 S. Ct. 1684, 1689 (1983) (quoting

 Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Ill., 391 U.S. 563,

 571–72, 88 S. Ct. 1731, 1736 (1968)).

¶ 12 Predating the federal Bill of Rights, the North Carolina Constitution has
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 protected the right to petition since 1776. See N.C. Const. art. I, § 12; N.C. Const. of

 1868, art. I, § 25; N.C. Const. of 1776, Declaration of Rights § 18. Article I, Section 12

 provides that “[t]he people have a right to assemble together to consult for their

 common good, to instruct their representatives, and to apply to the General Assembly

 for redress of grievances[.]” N.C. Const. art. I, § 12. Provisions like Article I, Section

 12 in state declarations of rights served as a model for the Bill of Rights. See Smith,

 Shall Make No Law Abridging, at 1174 (noting that state declarations of rights

 “expressly included the right to petition” prior to the Bill of Rights). Because the

 General Assembly “delegate[s] a portion of [its] power to municipalities,” petitioning

 activity can occur at the local government level. King v. Town of Chapel Hill, 367 N.C.

 400, 406, 758 S.E.2d 364, 370 (2014); see High Point Surplus Co. v. Pleasants, 264

 N.C. 650, 656, 142 S.E.2d 697, 702 (1965) (stating the General Assembly

 “strengthen[ed] local self-government by providing for the delegation of local matters

 by general laws to local authorities” (emphasis omitted)).

¶ 13 These local governments are “[l]ocal political subdivisions [that] are ‘mere

 instrumentalities of the State for the more convenient administration of local

 government[.]’ ” Town of Boone v. State, 369 N.C. 126, 131, 794 S.E.2d 710, 714 (2016)

 (quoting Holmes v. City of Fayetteville, 197 N.C. 740, 746, 150 S.E. 624, 627 (1929));

 see also King, 367 N.C. at 404, 758 S.E.2d at 369 (“[The Town of Chapel Hill is] a

 mere creation of the legislature[.]” (citing Pleasants, 264 N.C. at 654, 142 S.E.2d at
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 701)). The right to petition protected by Article I, Section 12 is “connect[ed] with the

 mechanics of popular sovereignty” which can occur before these local political

 subdivisions. John V. Orth & Paul Martin Newby, The North Carolina State

 Constitution 58 (2d ed. 2013). Article I, Section 12 thus protects petitioning activity

 before “local political subdivisions” such as a town.

¶ 14 Protecting the right to petition requires early dismissal of lawsuits that

 impermissibly seek to infringe on the right and thus chill petitioning activity

 occurring in these political contexts. See Bill Johnson Rests. v. NLRB, 461 U.S. 731,

 740–41, 103 S. Ct. 2161, 2168 (1983) (“A lawsuit no doubt may be used by [a party]

 as a powerful instrument of coercion or retaliation . . . . [T]he [opposing party] will

 most likely have to retain counsel and incur substantial legal expenses to defend

 against it.” (citing Power Sys., Inc., 239 N.L.R.B. 445, 449–50 (1978), enf. denied, 601

 F.2d 936 (7th Cir. 1979))). “[T]he pall of fear and timidity imposed upon those who

 would give voice to public criticism is an atmosphere in which the [right to petition]

 cannot survive.” New York Times Co. v. Sullivan, 376 U.S. 254, 278, 84 S. Ct. 710,

 725 (1964). When a lawsuit is premised on a party’s petitioning activity, the First

 Amendment and Article I, Section 12 mandate early dismissal.

¶ 15 The question here is whether defendants’ speech constitutes protected

 petitioning activity. Taking the allegations of plaintiff’s complaint as true, defendants

 “maliciously, intentionally and without justification” made misrepresentations
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

 regarding the dangers of fly rock, excessive air blasts, and ground vibrations from

 their own mining activity. Defendants, however, made these statements during a

 public zoning process before the Town. The Town is a clear example of a local political

 subdivision with delegated authority from the General Assembly. Zoning is a political

 process by which a local government seeks citizen input to make informed decisions

 for the good of the whole. Neither the maliciousness nor the falsity of the statements

 has any bearing on our analysis. Rather than subjecting to civil liability misleading

 or malicious speech made before a local political subdivision during a public zoning

 process, our constitutions protect free and open debate so that citizens may voice their

 concerns to the government without fear of retribution. Plaintiff’s remedy is to expose

 the falsity of the statements and submit alternative evidence, as plaintiff did here.

 During the process, defendants’ misstatements of the current risk associated with

 their mining activities and their financial incentives were exposed. The evidence

 taken as a whole convinced the Town to rezone the EMV Property over defendants’

 objections. That Braddock Park declined to purchase the EMV Property, to plaintiff’s

 economic disadvantage, does not remove protection from defendants’ speech.

 Therefore, defendants’ statements during the zoning process constitute protected

 petitioning activity.

¶ 16 The right to petition the government is a fundamental right. Here defendants’

 testimony during the public zoning process constitutes petitioning activity. Because
 CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

 2021-NCSC-56

 Opinion of the Court

early dismissal is necessary to protect the exercise of this fundamental right, the trial

court properly granted defendants’ motion to dismiss plaintiff’s lawsuit. Accordingly,

we reverse the decision of the Court of Appeals.

 REVERSED.